**McLEMORE et al. v. COMPTON.**
(No. 11379.)

(Court of Civil Appeals of Texas. Fort Worth. May 16, 1925. Rehearing Denied June 20, 1925.)

1. **Specific performance ⊙⟶121(11)—Evidence held to show that agreement to lease sought to be specifically enforced was not executed, due to plaintiff's claims and intentions.**

In suit for specific performance of agreement to lease ranch for grass and farm purposes, evidence *held* to show that plaintiff's claim of right to pecans grown on land, not mentioned in agreement, coupled with his implied intention to appropriate them to his own use, or put defendant to annoyance of lawsuit, was sole reason why lease was not executed on day designated.

2. **Landlord and tenant ⊙⟶139(1)—Right to pecan crops not included in lease for "grass and farm purposes"; "emblement."**

An agreement to lease land for "grass and farm purposes" *held* not to give lessee right to pecan crops grown on land, as crops left

growing on premises by outgoing tenant is an "emblement" (quoting Words and Phrases, First and Second Series, Emblement).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Grass.]

**3. Trial ⟨key⟩351(2)—Right to have contract reformed waived, where issue as to mutual mistake not submitted nor request therefor made.**

Where issue of mutual mistake, in omitting from agreement to lease right in plaintiff to pecan crops, was not submitted to jury, and no request for its submission made, plaintiff's alleged right to have mistake reformed in that respect was waived.

**4. Specific performance ⟨key⟩99—Plaintiff held not entitled to specific performance of agreement to lease where intended anticipatory breach on his part shown.**

Plaintiff, seeking to specifically enforce agreement to lease certain ranches for farm and grass purposes, *held* not entitled to relief, where evidence showed an intended anticipatory breach thereof by plaintiff at time parties met to execute lease, in that he had notified defendant he would claim pecan crops, and thus put defendant to expense of suit to enjoin him from so doing.

**5. Specific performance ⟨key⟩119 — Burden on plaintiff seeking to enforce agreement to lease to show that he was ready and willing to accept lease.**

To entitle plaintiff to specific enforcement of agreement by defendant to lease certain ranches for grass and farm purposes, burden was on plaintiff to show that, when parties met to execute lease, he was ready and willing and offered to accept lease for grass and farm purposes only.

**6. Appeal and error ⟨key⟩218(2)—Appellant failing to object to submission of issues because evidence insufficient not precluded from assigning error therein on appeal.**

Appellant's failure to object to submission of issues of fact to jury, on ground that evidence was insufficient to support findings in appellee's favor on those issues, does not preclude him from assigning error to findings on appeal on same grounds.

On Motion for Rehearing.

**7. Specific performance ⟨key⟩87 — One seeking specific enforcement of contract must show that he was ready and willing to perform his part.**

One suing for specific enforcement of a contract must show that he was ready and willing and offered to perform his part of contract in accord with its terms before he can complain of its breach by other party.

Appeal from District Court, Shackleford County; W. R. Ely, Judge.

Suit by Charles R. Compton against Ada McLemore and others. From a judgment granting plaintiff the relief prayed for, defendants appeal. Reversed and rendered.

J. A. King, of Albany, and W. J. Cunningham, of Abilene, for appellants.

Phillips, Brown & Morris, of Fort Worth, and M. S. Long, of Abilene, for appellee.

DUNKLIN, J. Charles R. Compton instituted this suit against Mrs. Ada McLemore, individually, and as executrix of the estate of Wade McLemore, deceased, to enforce specific performance of her written contract to lease to the plaintiff for a period of five years several tracts of land, comprising what is known as the Hazelwood and Ft. Davis ranches, "for grass and farm purposes," and to cancel a lease made subsequently to the execution of Mrs. McLemore's said agreement to J. B. Batchelor and Jack Farmer, the latter lease being taken by those lessees with full knowledge of the written agreement in favor of the plaintiff; Batchelor and Farmer being also made defendants in the suit. From a judgment granting plaintiff the relief prayed for, the defendants have appealed.

Mrs. McLemore's written contract, upon which the suit was based, was dated February 10, 1922, and by its terms bound Mrs. McLemore, for herself and as executrix of the estate of Wade McLemore, deceased, to execute to plaintiff on May 15, 1922, a written lease to the two ranches, beginning on the last named date and extending over a period of five years from that date. The consideration to be paid for the lease, as stipulated in the written agreement, was the sum of $4,795.20 per annum, payable in advance in semiannual installments. In the agreement Mrs. McLemore was designated as party of the first part and the plaintiff, Charles R. Compton, as party of the second part. The lease contained this provision:

"That the party of the first part for and in consideration of the sum of $4,795.20 per annum leases for grass and farm purposes to the party of the second part what is known as the Wade McLemore ranch, situated in Shackelford county, Texas, and Throckmorton county, Texas, comprising what is known as the Hazelwood ranch, and all that part of the Ft. Davis ranch situated in Shackleford county, Texas, containing 7,992 acres of land, together with the improvements thereon situated, for a term of five years, beginning on the 15th day of May, 1922, and ending on the 15th day of May, 1927, which lease contract shall be executed by the party of the first part and possession of said land and premises given to the party of the second part on May 15, 1922."

The evidence introduced upon the trial of the case shows conclusively that on May 15, 1922, the date fixed for the execution of the lease, the parties to the agreement met in the office of Judge King, Mrs. McLemore's attorney, in the town of Albany, for the purpose of consummating the prior agreement entered into, at which time a controversy

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

arose as to whether or not, under and by virtue of the terms of the written agreement, Compton would have the right to the pecan nuts produced by trees growing spontaneously upon the land and without cultivation along the water course that traversed the ranches. Compton claimed the right under the written agreement to all such nuts produced on the land during the period of his lease, and Mrs. McLemore insisted that the agreement did not give Compton the right so claimed. Compton having asserted that claim, Mrs. McLemore insisted that the lease to be executed by her should contain a stipulation expressly reserving to her the pecan crops, but Compton would not agree to accept the lease with that express reservation. Mrs. McLemore then returned to her home, but at the instance of Compton came back to Judge King's office later in the day, where the controversy between the parties was renewed, the respective contentions of the parties being again urged, but no lease was executed at that meeting. Compton made a tender of the amount which would have become due for the first six months of the lease period, which tender was refused by Mrs. McLemore. Two days thereafter, Compton instituted this suit against Mrs. McLemore. Three days later Mrs. McLemore leased the same land to Jack Farmer and J. M. Batchelor for $4,800 per year and one-fourth of all the pecans which the lessees should harvest from the land. The institution of the suit was recited in that lease, and provision was made for the adjustment of the rights of the parties thereto in the event of an ouster of the lessees as a result of the suit. After that lease was made, those lessees were made parties defendant to the suit by an amended petition filed by the plaintiff.

The first count of plaintiff's petition was a suit for a decree of specific performance of Mrs. McLemore's written agreement of date February 10, 1922. It was alleged in that count that the contract was for the execution by Mrs. McLemore of a lease on the two ranches for grass and farm purposes, which included the right and privilege of all pecan crops produced upon the property, and in that connection the petition contained this allegation:

"That the use and benefit of the pecan crop on said land and premises was inadvertently omitted and left out of said contract, but it was understood and agreed by and between both parties to said contract that the words, 'for grazing and farm purposes,' was intended to mean and did mean the use of the pecan crop as well as any and all other crops raised or to be raised on said premises, and that if said pecan crops were not mentioned in said contract, then the same was inadvertently omitted therefrom."

The second count in the petition was a suit to recover damages for the alleged breach of the contract in the event specific perform-

ance could not be enforced. It was alleged that the reasonable value of the use of the property for grass and farm purposes and for the purpose of gathering pecans therefrom was $10,000 per year, and that but for the breach of the agreement plaintiff would have realized from the lease a profit of $5,000 a year over and above the contract price of the lease, or $25,000 in the aggregate.

Mrs. McLemore filed an answer, which included a general demurrer and a general denial, and a special answer in which it was alleged that plaintiff himself had breached the contract by failing and refusing to comply with the terms thereof. In that connection it was alleged that there were growing on the land a large number of bearing pecan trees, which frequently produced an annual crop worth $3,000 or more; that there was no agreement between the parties to the written agreement at the time of its making or at any time that plaintiff should have the use and benefit of the pecans produced on the ranch, and that the contract did not give the plaintiff that right, and that there was no agreement between the parties before or at the time the contract was executed that plaintiff should have the right to the pecan crops.

The defendant specially denied the allegations in plaintiff's petition, that prior to the execution of the contract it was agreed by the parties that plaintiff should have the right to the pecan crops grown on the land, and that that oral agreement was omitted from the written agreement by mutual mistake of the parties. It was further alleged that shortly before May 15, 1922, plaintiff demanded of Judge King, defendant's attorney, that he draw a lease contract, to be executed by Mrs. LcLemore, giving him the right to the pecan crops from the land as well as the right to use it for farming and grazing purposes; and that on May 15, 1922, plaintiff made the same demand of Mrs. McLemore, which demand was refused by her, although at all times prior to and including May 15, 1922, she was willing and able to execute to plaintiff a lease in accordance with the terms of the written agreement, and that by reason of plaintiff's breach of the contract he was not entitled now to a specific enforcement of it.

The defendants Jack Farmer and J. M. Batchelor also filed an answer containing a general demurrer and a general denial, and specially pleading a breach of the contract sued on by plaintiff himself, which breach would operate as a bar to the recovery prayed for by plaintiff. Those defendants also alleged the lease to them by Mrs. McLemore, which they claimed gave to them a right to the use of the land superior to the alleged right of the plaintiff for a specific performance, by reason of plaintiff's own breach of the contract with Mrs. McLemore.

The trial was before a jury upon special

issues submitted to them. The findings of the jury were (1) that on May 15, 1922, Mrs. McLemore refused to execute a lease to the plaintiff in accordance with the terms of the written contract between the parties and upon which the suit was based; and (2) that on May 15, 1922, plaintiff, Compton, did not refuse to accept a lease from Mrs. McLemore in compliance with their said written agreement either at the first or second meeting between the parties on that date.

Upon those findings, the court rendered a decree compelling Mrs. McLemore, for herself and as executrix of the estate of Wade McLemore, deceased, to specifically perform the terms of the written contract between herself and the plaintiff, dated February 10, 1922, and made the basis of plaintiff's suit; also canceling the lease held by the defendants Batchelor and Farmer, dated May 20, 1922, and requiring all the defendants to immediately place the plaintiff, Compton, "in possession of the property in controversy for a period of five years from May 15, 1922."

The findings of the jury have been assailed by appellant on the ground that they were without any support in the evidence, and also on the ground that they were contrary to the overwhelming preponderance of the evidence on the issues involved.

The plaintiff testified specifically that he offered to accept the lease in exact accord with the written agreement between him and Mrs. McLemore, and that she refused to execute such a lease to him. In that connection he testified:

"I told her that we would drop the pecans from the contract and thrash that out later. I said I would take the lease according to the contract, and thrash out the pecans later."

He further testified:

"It is a fact that in Judge King's office, some 10 days before the 15th day of May, 1922, I then asked him to write a contract and put the pecans in it."

[1] Thus, from his own testimony, as well as from that of Mrs. McLemore, Judge King, and Judge King's stenographer, it conclusively appears that plaintiff claimed the right under that contract to all the pecans grown on the land, as well as the right to use it for farming and grazing purposes, and that he so notified Mrs. McLemore when he met her at Judge King's office on May 15th. The claim of that right, which was expressly and insistently made by the plaintiff, clearly implied an intention on his part to appropriate all pecan crops to his own use in the event the lease was executed in strict compliance with the terms of the written agreement, if not prevented from so doing by a decree of court.

The proof also conclusively showed that after plaintiff asserted his claim to the pecan crops in addition to the right to use the land for grass and farm purposes, Mrs. McLemore was willing and offered to execute a lease with an express reservation to her of all pecan crops, and that she refused to execute a lease without that express reservation. In other words, the evidence conclusively showed that plaintiff's claim of right to the pecans under the agreement, coupled with his implied intention to appropriate them to his own use or else put Mrs. McLemore to the annoyance and expense of a lawsuit to enforce her right to the pecans, was the sole reason why the lease was not executed to plaintiff on May 15, 1922.

[2] With respect to the uses to be made of the land, the terms of the agreement were not ambiguous, but were clear and specific, and, as a conclusion of law, did not entitle plaintiff to a lease which would give him the right to the pecan crops.

"In construing a written lease, the general rule is that the words employed are to be interpreted in the ordinary and popular sense, and according to their established meaning, unless the context shows that it was the intention of the parties that they should be understood in a different sense." 35 Corpus Juris, p. 1178.

"The rules of construction applicable to contracts generally are applicable in construing leases." Id. p. 1174.

"In construing a contract to give a lease, the controlling consideration is the intention of the parties to be collected from the whole instrument. Where the contract is clear and free from ambiguity, the court will not resort to technical rules of construction; in such case it is the expressed intention which governs, and the court will enforce the contract according to its terms." Id. p. 1202.

In Words and Phrases, vol. 3, p. 2359, the following definitions are given, among others of like import:

"A crop left growing on the premises by an outgoing tenant is an 'emblement.' * * * By the term 'emblement' is understood the crops growing upon land, and by 'crops' is here meant the products of the earth which grow yearly, and are raised by annual expense or labor, and by great manurance and industry, such as grain; but not fruits which grow on trees, which are not to be planted yearly, and grasses and the like, though they are annual. * * * 'Emblements' do not include fruit which grows on trees which are not planted yearly, grass, and the like. It only includes those crops which grow yearly, and are raised annually by expense and labor or great industry."

To the same effect, see Taylor's Landlord and Tenant, vol. 2, p. 134, § 534.

While the question of emblements is not specifically involved in this suit, the definitions recited above show that the pecan crops were not included within the meaning of the agreement to lease "for grass and farm purposes," as provided for in the agreement sued on.

[3] The issue of mutual mistake in omitting

from the contract an agreement to include in the lease the right in plaintiff to use the pecan crops, which was expressly tendered in plaintiff's pleadings and specifically denied by the defendant, was not submitted to the jury, and, no request for its submission having been made, plaintiff's alleged right to have the mistake reformed in that respect was therefore waived. And the same can be said of the issue of damages claimed by the plaintiff in the second count in his petition. G. H. & S. A. R. Co. v. Price, 240 S. W. 524, by the Commission of Appeals; Tex. City Transp. Co. v. Winters, 222 S. W. 541, by the Commission of Appeals; Public Service Co. v. Tracy, 221 S. W. 637, by the Court of Civil Appeals.

In 35 Corpus Juris, page 1207, under the title "Landlord and Tenant," the following is said:

"Acts and declarations by one party to the contract showing that he does not intend to be bound by, or to claim rights under, the contract will as a general rule relieve the other party from his obligations under the contract. A notice by the lessor to the lessee that the former will not give the latter a lease releases the latter from all obligation to perform. Where the proposed lessor has put it out of his power to perform by leasing the premises to a third person, the proposed lessee may take advantage of the breach without making an offer to perform. If the proposed lessor tenders to the proposed lessee for execution a lease which contains unauthorized provisions, the refusal of the lessee to execute such lease is not a breach of his agreement to take a lease. Where, after entering into a contract to lease a building, the lessor acquired knowledge that the lessee intended to use it for an unlawful purpose, he is justified in refusing to complete the contract. The destruction, intermediate the making of the preliminary contract and the giving of a lease, of a building which was to be erected by the proposed lessor under the preliminary contract is an excuse for nonperformance."

The following is said in South Texas Tel. Co. v. Huntington (Tex. Civ. App.) 121 S. W. 242:

"It seems to be settled by the authorities that where a contract requires the doing of certain things on the part of one of the parties thereto within a certain period, and the promisor either fails or refuses to perform, or by his acts and conduct clearly evinces a purpose not to do or perform the things he is obligated to do, or has placed himself in such position as to be unable to comply with the terms of the contract, that such conduct or failure or refusal may be regarded as a repudiation or abandonment of the contract, thus giving the right to the promisee to declare the contract at an end, and bring his action to recover damages for the breach thereof."

That announcement is in accord with numerous decisions which are cited in the opinion in that case. The decisions of the Court of Civil Appeals in that case was reversed by the Supreme Court, as shown in 104 Tex. 350, 136 S. W. 1053, 138 S. W. 381, but not on the point discussed in the quotation made above.

To the same effect is Draper v. Miller, by the Supreme Court of Kansas, 92 Kan. 695, 141 P. 1014, and also 19 Cyc. pp. 635, 636, and 649.

In Pomeroy's Equity Jurisprudence, vol. 1, page 661, § 400, in discussing the maxim that "He who comes into a court of equity must come with clean hands," the following is said:

"I shall now give some examples to illustrate the circumstances under which this principle operates in the administration of equitable relief, and the manner in which it is applied. The first instance which I shall mention is found in the familiar doctrine which controls the equitable remedy of the specific performance of contracts. A contract may be perfectly valid and binding at law; it may be of a class which brings it within the equitable jurisdiction, because the legal remedy is inadequate; but if the plaintiff's conduct in obtaining it, or in acting under it, has been unconscientious, inequitable, or characterized by bad faith, a court of equity will refuse him the remedy of a specific performance, and will leave him to his legal remedy by action for damages. It is sometimes said that the remedy of specific performance rests with the discretion of the court; but, rightly viewed, this discretion consists mainly in applying to the plaintiff the principle, He who comes into a court of equity must come with clean hands, although the remedy, under certain circumstances, is regulated by the principle, 'He who seeks equity must do equity.'"

"Acceptance of an offer is necessary to create a simple contract, since it takes two to make a bargain." 1 Williston on Contracts, § 64.

"An acceptance must be positive and unambiguous." Id. § 72.

"In order to make a bargain it is necessary that the acceptor shall give in return for the offeror's promise exactly the consideration which the offeror requests. If an act is requested, that very act and no other must be given. If a promise is requested that promise must be made absolutely and unqualifiedly. This does not mean necessarily that the precise words of the requested promise must be repeated, but by a positive and unqualified assent to the proposal the acceptor must in effect agree to make precisely the promise requested, and if any provision is added to which the offeror did not assent, the consequence is not merely that this provision is not binding and that no contract is formed; but that the offer is rejected. The new condition is as fatal when its inconsistency with the offer appears by implication only as when it is explicitly stated." Id. § 73.

"A conditional acceptance is in effect a statement that the offeree is willing to enter into a bargain differing in some respect from that proposed in the original offer. The conditional acceptance is, therefore, itself a counter offer and rejects the original offer, so that thereafter even an unqualified acceptance of that offer will not form a contract." Id. § 77.

"It may be asked if one who is offered a contract of employment can reply, 'I accept your offer, and demand that my work shall not exceed two hours a day;' and thereafter effectively assert that there is a binding contract. In

other words, can an acceptance be valid if it is accompanied by a repudiation of one or more of the legal consequences of the supposed contract? It seems clear that if before a contract is finally concluded the parties become aware that they are insisting on different constructions of their duties thereunder no contract will arise." Id. § 78.

"When an offer has been rejected it ceases to exist and cannot thereafter be accepted even though the acceptance is made within a time which would have been sufficiently early had there been no rejection.

"This principle is most commonly illustrated where a counter offer or a conditional acceptance which amounts to a counter offer is made by the offeree. This operates as a rejection of the original offer.

"The reason is that the counter offer is construed as being in effect a statement by the offeree not only that he will enter into the transaction on the terms stated in his counter offer, but also by implication that he will not assent to the terms of the original offer." Id. § 51.

"An anticipatory refusal by either party to perform excuses the other party from the performance or tender of performance which would ordinarily be a condition precedent to the enforcement of liability." 2 Williston on Contracts, § 767.

"Not only must the acceptance be unconditional but it must be identical with the terms of the offer. It must not vary from the proposal either by way of omission, addition or alteration. If it does, neither party is bound." 1 Elliott on Contracts, § 38.

"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done or offered to do, or is then ready and willing to do all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms." 4 Pomeroy's Equity Jurisprudence, § 1407.

In Roberts v. Lovejoy, 25 Tex. Supp. 437, the following was said:

"A party who seeks the specific performance of a contract must have performed, or must show a readiness to perform, the very contract in terms of which he seeks performance. He cannot disaffirm it in part, and at the same time hold the other party to the whole of his undertaking. The court will not aid him to have performance of the contract when he rejects any part of it. That would be to make for the parties a new contract, to which they had not given their assent. Courts of equity do not modify or change the contracts of parties to suit their own sense of what would be equitable and just in the premises, but leave them to make their own contracts. It may be that the defendant would never have entered into the contract which the plaintiff now seeks to enforce against him; that is, a contract to convey his right to the land in question for a sum considerably less than that for which he stipulated as the consideration for the transfer.

Whether he would or not the court cannot know, and cannot undertake to make for him a contract, which he has not made, without his consent. Courts never make contracts for parties; they will only compel performance of the contract which the parties have actually made, and only in favor of the party who has performed, or is ready and willing to perform his undertaking, according to its terms, and who is without fault."

[4] The facts recited above conclusively show an intended anticipatory breach of the contract by the plaintiff on May 15, 1922, when he and Mrs. McLemore met for the purpose of consummating their previous written agreement, and under some of the authorities cited above, even in an action at law, that fact would have been a valid excuse for Mrs. McLemore's refusal to execute the lease, even though in strict compliance with the written agreement. However, whether or not it would have been a valid defense to an action for damages for breach of the contract, it is clear that it furnished a bar to plaintiff's right to the relief in equity for specific performance of the contract which was sought by the plaintiff in the first count of his petition. Upon no principle of equity could it be said that a court of equity would compel the executrix to execute a lease when the proposed tenant had notified her that he would claim the pecan crops, and thus put her to the expense and annoyance of a suit to enjoin him from so doing, all in the face of the fact that he clearly did not have the right to make such claim under the plain language of the contract.

[5] In order to enforce specific performance of the contract, the burden was upon plaintiff to show that on May 15, 1922, when the parties met in Judge King's office, he was ready and willing, and offered, to accept a lease for grass and farm purposes only. And the issues submitted to the jury necessarily involved the questions: First, whether or not Mrs. McLemore was willing to execute the lease upon plaintiff's acceptance of it, with the intention of, according to her, claiming the right to the pecan crops that might grow on the land; and, second, whether or not plaintiff was willing and offered to accept the lease with that understanding and intention. Plaintiff's proposed acceptance of the lease with the avowed intention to breach it by appropriating to his own use the pecan crops was not an unequivocal offer to accept a lease for grazing and farming purposes only, and Mrs. McLemore's refusal to execute to him a lease even in the strict terms of the agreement, after being informed of plaintiff's intention to claim the pecans, could not be held a breach of the contract by her.

Under the undisputed proof recited above, the first of the issues submitted to the jury should have been answered in the negative, and both the second and third in the affirmative. Accordingly, the judgment of the trial

court is reversed, and judgment is here rendered in favor of appellants.

It is to be noted further in this connection that in his petition the only contract which plaintiff sought to have specifically enforced was one giving him the right to the pecan crops in addition to the right to use the land for "grass and farm purposes." Moreover, none of his pleadings contain any prayer for specific performance of the contract in the event the court should hold that the right to the pecans was not covered by the contract, nor did he so testify.

[6] The failure of appellants to object to the submission of the issues of fact to the jury, on the ground that the evidence was insufficient to support findings in appellee's favor on those issues, did not preclude them from the right to assign errors to those findings on appeal on the same grounds. See opinion by Chief Justice Phillips. in Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030.

Reversed and rendered.

### On Motion for Rehearing.

[7] Counsel for appellee has called our attention to some testimony which tended to show that prior to the time the parties met in Judge King's office for the purpose of consummating the original agreement to excute a lease, Mrs. McLemore had objected to a sublease of any part of the land by Compton to Pit Taylor, to which subletting she had by parol originally consented; that she had also objected to having the front of the house covered over with vines and the plowing up of portions of the land, and also that she had become doubtful of Compton's financial ability to pay the rental agreed on in the original written agreement. Appellee insists that that testimony, in connection with his further testimony as to what was said by Mrs. McLemore on May 15 when the parties met in Judge King's office, was sufficient, prima facie, to support a finding that Mrs. McLemore did not refuse to execute the lease by reason of Compton's implied assertion of right to the pecans growing upon the land, and that therefore this court was in error in holding in effect that the testimony showed beyond controversy that such was true.

We are convinced that the contention so made is correct, but we are further convinced that the same does not lead to a different conclusion than that reached by us to the effect that the judgment of the trial court should be reversed and judgment here rendered in favor of the appellants. As pointed out in the opinion on original hearing, this suit was by Compton for specific performance of Mrs. McLemore's contract to execute a lease for farming and grazing purposes only. That contract was clear and specific, and did not carry with it the right in Compton to appropriate the pecans grown on the land. It is an elementary principle recognized by all the authorities that one who comes into a court of equity and sues for specific enforcement of a contract must show that he was ready and willing, and offered to perform his part of the contract in accord with its terms, before he can complain of its breach by the other party. We adhere to the conclusion reached on original hearing that the proof conclusively showed that, at the time the parties met in Judge King's office, Compton offered to accept a lease for farming and grazing purposes, with the intention on his part thereafter to appropriate the pecans to his own use under and by virtue of the terms of such a lease unless prevented from so doing by judicial proceedings. In other words, it conclusively appears that his offer to accept a lease was a conditional and not an unequivocal offer to accept a lease giving him the right to use the land for grazing and farming purposes only, but that his offer was with intention also to claim all pecans growing upon the land during the period of the lease. In other words, the evidence conclusively shows that he himself was guilty of an anticipatory breach of the contract, and, under the authorities cited in the opinion on original hearing, that fact constituted a bar to the relief of specific performance, even though it could be said that the defendant was also unwilling to execute a lease in conformity with her written contract.

In addition to the testimony heretofore pointed out, Compton testified as follows:

"Mrs. McLemore did not offer to sign a contract according to that agreement. I did not refuse to take the contract unless the pecans were embraced in it. She left there and went home, and I phoned her to come back down there. I had her come back down there (meaning to Judge King's office on May 15). As to it being a fact that I then told her that I would enter into a contract eliminating the pecans and 'that we would thresh the pecans out later, I told her we would thresh the pecans out later. I told her that I would enter into a contract leaving out the pecans, and thresh the pecans out later. I told her something like that. Answering why, if I had been insisting on the pecans going into the lease contract in the first instance, that I called her back and changed the pecan question, I did it simply because I went down to the bank to get the money; that's exactly it; to get the checks written out." (The checks referred to in that testimony were those tendered by Compton for the first payment on the lease.)

"I did not testify before that the disagreement between Mrs. McLemore and me, in the first instance, over the pecans, was when she was there in Judge King's office. As to it being a fact that I insisted then that the pecans were a part of the contract and should go into the written contract, the pecans were spoken of. The pecans were spoken of down at my house, when she came down there, in a friendly conversation. Answering if in Judge King's office on the morning of the 15th, if I haven't testified before that I insisted then

that the pecans should go into the lease contract that was to be prepared on the 15th, and that she insisted that it was not part of the contract, and refused to sign the contract with the pecans in it, I insisted that I should have the lease according to the contract; that I would take the lease according to the contract. I know that I have testified heretofore that when she came back up there the second time, or when I had her come back up there the second time, I then told her that we would drop the pecans from the contract and would thresh that out later on."

Compton further testified that in the preliminary negotiations between the parties and before the written contract was entered into, Mrs. McLemore had agreed that he might have the pecans on the land if she leased it to him. Furthermore, as pointed out in our original opinion, in his pleadings Compton expressly claimed the right to the pecans under an alleged oral agreement, inadvertently omitted from the written contract, that Mrs. McLemore would execute a lease giving him the right to the pecans as well as the use of the land for farming and grazing purposes; and in his pleadings he prayed that the written agreement be so reformed as to give him that right, and that the contract be specifically enforced as so reformed.

Accordingly, the motion for rehearing is overruled.